Yarbrough v. Decatur Housing, Mr. Fortin. My name is Miles Fortin. I'm here today on behalf of Legal Services Alabama for Ms. Sheena Yarbrough. We're here today to ask the court to approve the panel's decision in Basco v. Machen. Because, put simply, if the Constitution will tolerate an administrative period that deprives an individual of their property interest without any meaningful evidence, then the claim that there's due process under Goldberg is meaningless. Well, we asked you to brief a pretty narrow question, and you just argued a pretty broad proposition. What we asked you to brief was whether we should overrule Basco insofar as it recognizes under Section 1983 a right to enforce this regulatory requirement of a preponderance of the evidence standard in an administrative hearing to terminate Section 8 benefits. That's a different question from whether you could sue to enforce a guarantee of due process of law, which is an issue that the panel would still address, but is not really before the en banc court. Well, yes, Your Honor, and it may be that we've misunderstood the question in some regards, but I believe that to the extent that in reading Basco, we don't believe that it was founded strictly on regulations. The regulation was cited strictly in Basco, but then— Well, let's say it is. Let's say insofar as the regulation is purported to be enforceable under 1983, that's contrary to Supreme Court precedent, right? That's contrary to Gonzaga. That's contrary to Alexander v. Sandoval, isn't it? Well, I don't believe so, Your Honor, but just to clarify, when you say under Section 1983, you're not saying the Fourteenth Amendment through Section 1983, like the Graydon analysis, which would be— As I said at the outset, it's one thing to say that you're using 1983 to enforce a constitutional guarantee of due process of law. It's another thing to say you're using Section 1983 to enforce a Federal regulation about a preponderance of the evidence standard. The question before the Court is, should we overrule Basco insofar as it recognizes the latter, not the former? Well, in your honor, I don't believe that the Court should, and the reason basically being, as fleshed out very well in the amicus brief filed by the National Housing Law Project, I believe that the preponderance of the evidence would merely be fleshing out due process. I believe that the regulations and the statute that authorizes them is largely a fleshing out of due process. It's not adding any additional rights. As the National Housing Law— Which is, can you use 1983, though, just to enforce the regulation? Well, I think you can, your honor. I think that under Gonzaga, the statute, 1437D subpart K, is sufficiently clear in that it says that the public housing authorities were— The statute says nothing about preponderance of the evidence, does it? Well, it doesn't. That is true, your honor. It doesn't. However, as the National Housing Law Project's brief goes into great detail on, basically the American courts recognize three separate standards of proof in civil cases. Whenever there's an administrative body with quasi-judicial functions, that is, beyond a reasonable doubt, clear and convincing evidence, and the lowest of all the standards, the minimum standard that the law will recognize is preponderance of the evidence. That's not always true, though, right? For example, in the prison disciplinary setting, you require minimal proof as a matter of due process, and that's somewhat below a preponderance. But in your honor, I— I think you're right that the traditional default standard for civil cases in American law is preponderance of the evidence as a general matter. But constitutionally, that's not always the case, right? Well, I think the one—the one ball by our hand is that a quasi-judicial or an administrative hearing type event, because in prison discipline cases, obviously a lot of the due process rights are either not there or they're truncated because of the special interest in prisons. I do understand that there is a sum evidence standard that the Supreme Court recognized in Walpole v. Hill differentiating that. But I still—but I still believe that what the Third Circuit said, and I don't know where they included the case name, but the Third Circuit basically said that preponderance of the evidence is the minimum standard because anything less than preponderance of the evidence would mean that taking all together all the— —didn't do what they were accused of and we're going to find that they did anyway. Because the Walpole v. Hill and other cases, including Basco, the question isn't whether or not the standard at the original trial should be preponderance of the evidence. The question is the standard of review. And I don't necessarily know that Hill gets into what the standard of— Let me ask you a different question, since you don't really seem to want to talk about the Gonzaga and Sandoval question. But—and your adversary, the authority, says something in its brief that we really hadn't considered before, which is that 1437d subpart K addresses tenants of units of public housing projects. It does not deal with recipients of Section 8 assistance at all and that we have so held in Colvin. And when I—you had what I thought was a fairly persuasive response about the subparagraph that Colvin relied upon, but when I read K and I read L and I read all the parts of 1437d, it does look like that the reference to tenants there is not a recipient of Section 8 benefits. And the real clincher was the 1996 amendment to this statute that actually extended Q, the public records provision, to the recipients of covered—of Section 8 assistance, which is—if that's true, that's the end of the inquiry, isn't it? It would be the end of the inquiry, Your Honor. However, I don't believe that's true, based on several things. First, the House report that was issued when 1437dK added the provision about—it basically goes into that because— The House report doesn't do anything. I mean, the actual amendment that was voted on by Congress makes clear that it's extending that provision to something different, that is, recipients, someone different, of covered housing assistance, including Section 8 assistance, in contradistinction to the rest of this statute, which is speaking only to tenants of public housing. Well, and again, Your Honor, we—to the extent that they may have extended rights, I don't necessarily think that it means that 1437dK doesn't apply to voucher recipients. This Court held, obviously, in Basco and other cases that it does, but— Why did they use that language? Why did—I mean, you've got K referring to tenants, and then it references L. L speaks about lease agreements between tenants and public housing authorities and evictions. It's very clear to me that that's all about folks who live in a unit of a public housing project as a—why make that distinction? Well, and I think that the reason that that goes to the tenants of public housing as opposed to tenants under vouchers is that there's a separate rule that basically has many of the same rules, saying leases under vouchers have to have—they also have to have certain limitations. They can't be less than a year. But they didn't amend K like they did Q. They didn't add that recipients of covered assistance to subsection K. Congress didn't. But I don't necessarily know that all of the parts of 1437 necessarily apply to voucher holders. I do believe, however, that 1437BK applies to voucher holders. Why? It uses the word tenant in the way the rest of the section does. Well, and I think that, again, this would go back to the House report. In the House report, it talks about tenants, and it combines the use sometimes of tenants in the term public housing, and then sometimes separates out the term vouchers so that when they were drafting the statute, it was— K refers to tenants, not recipients of vouchers. There's also language in K, as you know, that says the Secretary shall, by regulation, require each public housing agency receiving assistance under this chapter. And that includes both the vouchers and the public housing groups. The chapter does. So it's not really confined to tenants. Yeah, that's an agency receives assistance under the chapter, right? Yes, sir. But then it refers to tenants. Right. Well, and I do believe that many sections referring to vouchers also refer to tenants because even vouchers are exclusively going to be, like, they're going to be placed with tenants. And that at certain times, I think the opposing counsel references 1437F subpart H, which says something about contracts. Now, that is—that's the Section 8 provision, right? That is the more fleshed-out rights under Section 8 because it was created separately from brick-and-mortar public housing. Which is what Q specifically references, is F. Yes, Your Honor. And I think that because of the size of 1437 and with the multiple subparts, and I think also 1437O, which is about a slightly separate type of Section 8 voucher, it's a self-sufficiency voucher, which helps people not only remain housed but also then would be aiming towards getting them to live in housing. It's a different kind of voucher. That specifically also references 1437DK, saying that you have rights to process under 4738 or 1437DK. But I don't necessarily think that just because sometimes— You know, when the Department of Housing and Urban Development promulgated the regulation that you've relied upon, it invoked 1437F, not 1437D. Isn't that right? Yes, Your Honor. And, you know, although there's no indication of why they did that other than like the— Well, they might have done it because that's the one that covers Section 8. Well, they also did this because it's the one that primarily covers vouchers. That is the genesis. It's a creation of vouchers. So when you're making a whole set of regulations regarding vouchers, you may very well rely back on the section that just talks about vouchers. And so I don't necessarily know the fact that they don't reference DK. I don't know if it's frequent that they would say FNDK. But I think all of the regulations regarding voucher holders cover that. We do think, however, that the statute, 1437DK, does apply. We think that it has clear and unambiguous language that specifies some tenants, and it says that a tenant will be advised on specific grounds, will have an opportunity. And we think under the post-Gonzaga, Blessing, Sandoval cases, that would be sufficient to create rights, and that whatever the regulations do is just fleshing it out. Because, again, as the National Housing Law Project argues, that is purely— I believe that what they're saying when they said the preponderance of property standards is the minimum that the law can allow. We're not really adding anything to what the statute says. The Coswell case, which, Your Honor, I just wanted to address that because Your Honor raised it in your concurrence in the panel discussion in this case. I did want to address it in that it does mention the fact that when Gonzaga was passed, Roanoke versus the City of Roanoke was one of the two special exceptions recognized as surviving any sort of 1983 scrutiny, statutory scrutiny, that that is an action under the Housing Act, which is still valid today, which Coswell then came back and applied to a voucher termination case, not similar to this, but at least a voucher termination case, and said it did not apply in that case. We think that it's separate and different in this case. We think that—oh, I see my time's up, and I finished my point there. We think that it's different because we believe that in that case, they were trying to specifically rely on right regarding computation of rents, and this would be use of other rights under the Act. Thank you, Your Honor. Thank you. Mr. Hill? May it please the Court, Rudy Hill, Jay Gibson, Stanley Blackman for the Decatur Housing Authority. We've approached the court's en banc question through both the constitutional and the statutory lens, but it seems to me it focuses on the statute, so we'll address that question first. Our argument there is threefold. First, there is no statute whatsoever to begin with that confers upon Section 8 recipients any informal hearing whatsoever. Secondly, the statute that Yarbrough relies on, the only statute that she relies on, doesn't create a privately enforceable individual right. Haven't four other circuits gone the other way on that issue, the third, the fourth, the ninth, and the District of Columbia circuits? Judge Wilson, there have been several courts that have found a privately enforceable right within the Fair Housing Act in a handful of decisions specific to subsection 1437BK. However, most of those decisions are pre-Gonzaga and don't apply the unambiguous requirement that Gonzaga clarified when it kind of looked back on the Supreme Court's jurisprudence in this area. So we would argue that the courts that have gone the other way on this issue haven't given the issue the full attention it desires. The foundational decision was the D.C. Circuit decision in Samuels, and it adopted the rationale for 1983 that was expressly rejected in Gonzaga. Isn't that right? Yes, Your Honor. And so our second part of our argument on the statutory issue, there's no privately enforceable federal right, and then the third part of the argument is that this regulation goes outside the text of the statute and creates distinct obligations that aren't found, have no support in the statute itself. I'll start, however, with the argument that there is no statute whatsoever that most of my adversaries have focused on at the beginning. Looking through the Fair Housing Act, not only is it 1437D, but throughout it's clear that 1437D is devoted to the relationship between public housing authorities and HUD with respect to the provision of public housing, which is defined in the Fair Housing Act to exclude Section 8. In fact, if you run through the provisions, they're right. 1437DF, public housing quality requirements. DI, reserve fund for public housing. Can I ask you about the provision that does address vouchers, the F? So there's a term in 1437FH that refers to contracts for assistance. What does that mean in the statute? A prior panel of this Court allowed that language to hold that Section 1437DF does not apply. But what is it, contracts for assistance, what does that mean? It's not clear, frankly, from the statutory language. One interpretation is that it does only apply to the contracts between the landlord and the public housing authority, which our adversary has presented in their reply brief. But it's ambiguous. It's not defined within that section. And that section also talks in other areas about— Well, let's say your adversary is right about that, which I think it is. Your adversary is right about that, that it's covering contracts between the public housing agencies and the contractors who build these kinds of projects. Then that subsection then doesn't tell us anything about this inquiry, right? But it could have expressly excluded that provision from DK. I mean, that's the argument. We have one out in other parts of the Fair Housing Act. Congress has shown that they know how, whether to incorporate specifically the provisions of DK against Section 8 recipients and parts where they know not to incorporate that against Section 8 recipients. In fact, hasn't it actually said in some of the provisions, it's carved out specifically, as you've mentioned, for example, 1437A sub A1, defining rent, quote, for a dwelling unit assisted under this chapter other than a family assisted under Section 1437F, et cetera? I mean, so when it means not to include the Section 8 recipients, doesn't it expressly carve that out? Well, I would argue in terms of later provisions of the Fair Housing Act where Congress has incorporated 1437DK specifically against Section 8 recipients, which it did for the Welfare Self-Sufficiency Program, the mere fact that Congress in the statute had to do that shows that it viewed that section as not applying Section 8 recipients otherwise. And I would shift the focus back to the DK itself. Well, let me ask you something else. For 1437F, that is the public, that is the Section 8 section, right? Would you agree? Yes, ma'am. Okay. Are you aware that it uses the word tenant in there more than 80 times? Tenant is used throughout the Fair Housing Act. So I don't think the mere fact that tenant appears in DK alone. It doesn't tell us one thing or the other, right? We can't say just because it says tenants means that Section 8 assistance recipients are not included, right? Yes, Judge Rothenbaum, I completely agree. Merely the fact that tenants appears there does not answer the question. However, the fact that tenants appears in that DK in the statute that otherwise is completely devoted to public housing. But it references L, right? It speaks about tenants of the kind who are addressed in L, right? And what is L about? That's right, Judge Breyer. DK2 specifically says provides an entitlement to tenants to a hearing contingent upon time period set forth in subsection L of the statute which relates to leases. And a read of that provision can only lead to the conclusion that that concerns leases between a tenant of public housing and a public housing authority. And then below the six requirements, it references evictions and concerns about public safety of other tenants and employees of the public housing authority, which naturally… That's what every section, subsection of D refers to with the exception of Q, which has then, which uses very clear language to say that it is also covering Section 8 in contrast with the rest of the section. Yes, Judge Breyer. Mr. Hill, do we need to decide any of this? I mean, can't we just say there's no preponderance of the evidence standard required as a due process requirement? What if peace broke out and we issued a unanimous opinion? That would be all that the en banc court needs to do in this case, isn't it? Well, I think the original panel opinion… We could do that, right? We could do that, right? Judge Martin's right. I mean, that would be an independent ground for overruling BASCO, right? There are several independent grounds that we could consider overruling BASCO, and I do believe BASCO has led a number of courts in this circuit and others into erroneous assumptions about the scope of the due process… We can fix that by just saying no preponderance of the evidence requirement, right? Just to make sure I understand your honors, proposed holding there's no constitutional requirement to a preponderance standard… I think Judge Martin is saying, and she can correct me if I'm wrong, what she's saying is that 1983 is not an enforcement vehicle for this preponderance of the evidence standard in the regulation. Certainly. Certainly, if you would decide it on the issue of the regulation going beyond the scope of the statute, that's our third argument. I like that one too. I like that one too. I mean, if we've got all these conflicting opinions about, you know, what parts of the statute apply to the voucher system, what parts apply to the public housing, I mean, we don't really need to fight about all that, do we? If we just address this one issue of the standard of review, that decides the case, right? Yes, Your Honor. The court absolutely could avoid the statutory question by confining its reasons to holding to the fact that the regulation goes beyond anything provided. And you'd go home happy, right? Now, that would leave, though, for the panel. We would have to remand to the panel, would we not? Any questions about whether there was a denial of constitutional due process that would be enforceable under 1983, correct? That's right, Your Honor. And part of the argument for this court has been, because BASCO appears to have been grounded in principles of constitutional due process, that this court should deny it. Well, maybe, maybe not. Insofar as it recognizes, though, that 1983 right to enforce the regulation, if we overrule BASCO to that degree, you don't dispute 1983 can be used to enforce the due process clause, right? No, Your Honor. We do not dispute that proposition. However, when federal courts begin reviewing agency fact-finding based on the sum evidence standard articulated in Hill. But that's all an issue for the panel, right? Yes, Your Honor. I do think the panel can address that issue. But the question, I think, that's being put to you, Counsel, is there any sound reason why this court ought to go beyond the question Judge Martin put to you and say anything more than that 1983 is not an enforceable vehicle for the standard of preponderance found in the reg? Why should we say more when the panel hasn't had a chance to say anything? Well, Your Honor, I do believe the panel grounded its holding in the idea that due process enabled a federal court to go further than it should be allowed to to evaluate the sufficiency of the evidence in a Section 8 termination proceeding. And I do believe that BASCO has somewhat enabled that reasoning through its talk of burden shifting in the Prima Fascia case and language of that nature. But we asked you to brief and argue whether we should overrule BASCO insofar as it creates a 1983 right to enforce that regulation, right? Yes, Your Honor. And if we overrule it, then the question of what 1983 would enforce in terms of the due process clause would be remanded to the panel, right? Yes, Your Honor. Certainly, if that's the court's prerogative here, then I won't belabor the point. So at the end of the day, our statutory argument is no statute. There's no federal right created by the statute. And the third point that the court can jump to to avoid the first two is that the regulation goes outside what's provided in the statute if we assume the other two to go against us. Mr. Hill, I heard you say you wouldn't belabor the point, and you also made a fleeting reference to the end of the day. Do you have anything you haven't already covered that you'd like to cover? I'll do the remainder of my time to the court, Your Honor. Thank you very much. Court. Both of the winning lawyers today are former law clerks of mine. Your Honor, I actually did not bring a copy of the question presented with me, which is clearly a mistake, but it's my memory that the question presented by the court was, should the court refer to FASCO insofar as it created a 1983 action under the U.S. Housing Act 1437BK and the sites in which it was created? Corresponding regulation for a preponderance of the evidence standard. If the question presented actually references and the regulations are still there, I don't recall reading it, because when we read the question presented, the first question that raises in FASCO is that FASCO doesn't even cite 1437BK. No, but implicit in FASCO is what FASCO appears to assume is that there is such a right, and then it applies it. And I suppose that was part of the point of why the appellant's brief didn't tell you, because FASCO does have a footnote with the regulation in it, but it doesn't rely on the regulation. It relies on J.A. and Felder's. It relies on Mr. Simpson's and Mr. Corrales' due process reasons why it should be upheld. I suppose that our argument would be that to the extent that the court— Well, certainly this was what, I mean, the panel was concerned about, was when you rely upon arrest records and an indictment, and then there's a regulation that requires a preponderance of the evidence standard and the panel wasn't satisfied that this evidence was enough to satisfy the regulatory standard, that's the way the panel understood FASCO, right? I guess my argument would be that although FASCO could have decided to try to base this decision on the regulation and on the preponderance standard, I don't believe it did. In citing J.A.M. and Richardson v. Corrales, it was citing cases with another substantial evidence standard of review from Administrative Procedures Act cases. So it wasn't tying to cases regarding the regulation. It was tying to cases outside of housing law that created a general due process right, which this court in Holly v. Seminole County recognized that the substantial evidence review and some of those things were just tied to due process. They were tied to simple due process concepts. So to the extent that the court is now considering overturning FASCO based on a basis that I don't believe FASCO held, that would be our concern. Although we do believe that 1437D case still creates a right and that it could have been a vehicle for FASCO, we don't believe that it did. And I will say real briefly to the—I think that my opponent mentioned the Colvin case, which is a case that in their brief they strongly suggested this court would be overturning Colvin and that an 11th Circuit precedent has been set that subpart BK doesn't apply to vouchers. And we believe that to the extent that the Colvin case is simply discussing the fact that housing authorities have the right to not have hearings when there will be a future hearing, kind of a Mackey v. Monterm situation where if there's going to be a future, if you're going to get a case in court in the future, you don't necessarily have to have a hearing prior to termination because there will be due process provided nonetheless. To the extent that much of our briefing, the majority of our briefing was on constitutional due process, which we believe is the basis of FASCO. If the court should find that there is no right under 98255 to have this case, I guess when we argue at the panel, I would consider the remainder of my time. Thank you, Mr. Court. We'll take that case under submission. All rise.